**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1569-15T3

NICOLE LOMANGINO,

      Plaintiff-Appellant,

v.

FRED LOMANGINO,

      Defendant-Respondent.

_____

Argued November 29, 2016 – Decided June 9, 2017

Before Judges Espinosa and Guadagno.

On appeal from the Superior Court of New
Jersey, Chancery Division, Family Part,
Monmouth County, Docket No. FM-13-0693-13.

Steven P. Monaghan argued the cause for
appellant (Law Office of Steven P. Monaghan,
L.L.C., attorneys; Mr. Monaghan and Jessica
L. Berg, on the brief).

Elliot S. Solop argued the cause for
respondent (Dwyer, Bachman & Newman, LLC,
attorneys; Mr. Solop, on the brief).

PER CURIAM

    Plaintiff, Nicole Lomangino, and defendant, Fred Lomangino,

were married in 2001, and had two children, A.L., born in 2004,

and F.L., born in 2006.  During the marriage, the parties

resided in Tinton Falls and defendant operated his father's business, which was also located in Tinton Falls.

Plaintiff filed a complaint for divorce in October 2012. At the time, she was employed by a government contractor at Fort Monmouth. The parties were divorced on June 27, 2013, when a dual final judgment for divorce (FJD) was filed. The FJD incorporated a matrimonial settlement agreement (MSA) dated May 30, 2013.

The MSA provided that the parties would share joint legal custody of A.L. and F.L., who were then, nine and seven, and plaintiff was designated the parent of primary residence. Paragraph 2.2 of the MSA addressed schooling for the children:

> The parties have agreed that the children shall continue to attend the Tinton Falls public school system so long as Husband resides in Tinton Falls. Therefore, the Husband's Tinton Falls address shall be used for school district purposes. The children remaining in the Tinton Falls school system is a bargained for exchange and an integral part of this settlement.

In July 2015, plaintiff's employer informed her that her position at Fort Monmouth[1] was being relocated to Aberdeen, Maryland, and she would be terminated if she did not accept the

---

[1] In 2005, Fort Monmouth became subject to the Base Realignment and Closure (BRAC) program and the Department of Defense subsequently began a gradual process of shutting down the base.

transfer.  Plaintiff filed an order to show cause seeking to relocate with the children to Maryland.  On August 7, 2015, Judge Angela White Dalton entered an order denying plaintiff's request to relocate the children; maintaining them in the Tinton Falls School District; and ordering a hearing on plaintiff's application.  On August 13, 2015, we denied plaintiff's motion seeking permission to file an emergent motion on short notice challenging the August 7, 2015 order.

Judge Dalton conducted an extensive plenary hearing on seven non-consecutive days in October and November 2015.  On November 16, 2015, Judge Dalton entered an order accompanied by a written decision denying plaintiff's application to relocate the children.

On appeal, plaintiff claims Judge Dalton's findings are erroneous, constitute an abuse of discretion, and she erred as a matter of law by failing to grant plaintiff's relocation application under Baures v. Lewis, 167 N.J. 91 (2001).  She urges that we adjudicate the matter "anew" and exercise our original fact-finding jurisdiction.  We reject plaintiff's arguments and affirm substantially for the reasons expressed by Judge Dalton in her thorough and thoughtful decision.  We add only the following comments.

We accord deference to the fact finding of our Family Part judges because of the family court's special jurisdiction and their expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 413 (1998). We employ a de novo standard of review to plaintiff's claim that Judge Dalton erred in her interpretation of the law. Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

Plaintiff argues Judge Dalton erred by failing to determine that her job transfer constituted "changed circumstances" sufficient to warrant modification of the MSA. She also claims the decision to uphold the non-location provision in the MSA as a basis for denying her removal motion was "a misapplication of law."

Judge Dalton made the following factual determination:

> [T]he principal facts and circumstances applicable to this removal action were cognizable at the time of the entry of the final judgment of divorce primarily because plaintiff had been subject to potential employment change due to the BRAC many times before and after the divorce. . . . It appears to this court, that the very potential posed by Plaintiff's career that she would, at some point, be faced with the choice of changing careers or relocating to Maryland was the motivation for paragraph 2.2 [of the MSA].

This conclusion finds ample support in the record, and plaintiff does not challenge it on appeal. Since plaintiff has

not shown that her BRAC transfer was unanticipated, she must demonstrate that the non-location provision "is now not in the best interests of a child." Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 152 (App. Div.), certif. denied, 178 N.J. 34 (2003).

Judge Dalton referenced plaintiff's testimony that, before her removal application, she wanted to reduce the amount of time defendant spent with the children, and proposed to "totally eliminate" any after-school time he spent with them.  The judge expressed concerns that if plaintiff moved to Maryland with the children, she would not encourage them to maintain their relationship with defendant, and he would lose the daily contact with them envisioned in their agreement.

Judge Dalton noted that the children benefit from "a rich diversity of extended family" which she considered a significant factor in her determination.  Both parties have an extensive support network in New Jersey and because plaintiff planned to return to New Jersey at some point, the judge found it made "little sense to disrupt the children on a temporary basis, and to establish a precedent where [their] extended daily contact with the Defendant would be eliminated from the children's lives."

Finally, Judge Dalton noted that the parties agreed to the parenting time and custody arrangement in the MSA as well as the provision maintaining the children in the Tinton Falls school system because they believed it was in the best interests of the children.

"New Jersey has long espoused a policy favoring the use of consensual agreements to resolve marital controversies." J.B. v. W.B., 215 N.J. 305, 326 (2013) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). We recognize the contractual nature of those matrimonial agreements. Pacifico v. Pacifico, 190 N.J. 258, 265 (2007). Generally, in the absence of "unconscionability, fraud, or overreaching in the negotiations of the settlement, . . . no legal or equitable basis exists to reform the parties' property settlement agreement." Miller v. Miller, 160 N.J. 408, 419 (1999).

We are satisfied that the record discloses substantial and credible evidence to support Judge Dalton's findings and her conclusion that there were no changed circumstances which would support modification of the MSA.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1569-15T3